❏ Original ❏ Du...



CLERK'S OFFICE
A TRUE COPY
Oct 16, 2025
S... DDL
Deputy Cl... k, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. **25-M-546 (SCD)** |
| Cellular telephone assigned number 920-268-5495 | ) | |
| ("TARGET CELLPHONE") | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____10-30-25_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____04/16/2026_____ .

Date and time issued:  _____10-16-25. 10:25 am_____      *Stephen C. Dries*
                                                                    *Judge's signature*

City and state:   _____Milwaukee, Wisconsin_____      Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                            *Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned telephone number **920-268-5495**, referred to herein and in Attachment B as **Target Cellphone**, with the subscriber Evangelina Garcia at 5611 N 40th Street Apt 3, Milwaukee, WI 53209, used by James Anthony SANTANA, that is in the custody or control of T-Mobile a service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. The **Target Cellphone**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**Matter Number XXXXXX**

I.        **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cellphone** for the time period from March 14, 2025, to present:

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cellphone**, including:

   1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cellphone** for a period of 30 days from the date of this warrant, including:

   i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii. Source and destination telephone numbers;

   iii. Date, time, and duration of communication; and

   iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cellphone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cellphone**.

c. Information about the location of the **Target Cellphone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cellphone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cellphone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving James Anthony SANTANA and other unidentified subject(s) since March 14, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by T-Mobile in order to locate the things particularly described in this warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Oct 16, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Cellular telephone assigned number 920-268-5495<br>("TARGET CELLPHONE") | )<br>)<br>)<br>)<br>) |

Case No. **25-M-546 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 & 843(b) | Distribution, Conspiracy to Distribute a Controlled Substance, Unlawful Use of a Communication Facility |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☑ Delayed notice of _180_ days *(give exact ending date if more than 30 days:* _04/16/2026_ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SAMUEL WASMUND <span style="font-size:small">Digitally signed by SAMUEL WASMUND<br>Date: 2025.10.15 15:56:20 -05'00'</span>

*Applicant's signature*

Samuel Wasmund, DEA Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: ___10-16-25___

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Samuel Wasmund, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **920-268-5495 (Target Cellphone)**. The **Target Cellphone's** service provider is T-Mobile ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2.      The **Target Cellphone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.  The listed subscriber for the **Target Cellphone** is Evangelina Garcia at 5611 N 40th Street Apt 3, Milwaukee, WI 53209. **Target Cellphone** is used by James Anthonay SANTANA aka "Conejo" (hereafter referred to as "SANTANA").

3.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

4.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application(s) by the United States of America for

an order(s) pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices (pen-trap devices) to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cellphone**.

5. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) and am currently assigned to the Milwaukee District Office. I have been employed by the DEA since October 2015. I am a Criminal Investigator or Law Enforcement Officer of the United Staes within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses. Since my employment with the DEA, I have conducted investigations dealing with complex international drug trafficking and money laundering conspiracies. I have further training and experience in advanced undercover operations, complex international drug trafficking conspiracies, the use of the internet, electronic media, social media, cellular devices, and cellular applications for violations of Title 21.

6. As a DEA Special Agent I have managed confidential sources (CSs), worked in an undercover capacity, conducted surveillance, arrested suspects, executed search and arrest warrants, seized evidence, prepared investigative reports, and interviewed suspects. I have been involved in controlled substance investigations that have utilized court authorized Title III intercepts of wire and electronic communications. I have consulted with other agents and prosecuting attorneys in matters dealing with the enforcement of the Controlled Substance Act and as a result, have gained considerable experience in the investigation of drug traffickers, drug trafficking organizations, and money laundering organizations working on behalf of drug traffickers. In sum I have experience in criminal violations relating to narcotics trafficking and

2

money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.

7.     I have conducted complex international and domestic drug trafficking investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.

8.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend fugitives. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

9.     Further, I have a Master of Business Administration with a double emphasis in International Business and Management. Likewise, I have a Bachelors of Business Administration with majors in General Business and Spanish. I have extensive experience with Spanish and have previously worked as a full-time Spanish interpreter. Likewise, I have extensive experience throughout Latin America.

3

10.    The facts in this affidavit come my personal participation in this investigation, and my review of: (a) Facebook activities conducted by SANTANA (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c) cellular telephone toll analysis. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11.    Throughout this affidavit, reference will be made to case agents or investigators. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

12.    Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by SANTANA and other known and unknown individuals.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## JURISDICTION

13.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

4

**PROBABLE CAUSE**

14.     This application arises out of a DEA investigation being conducted by the DEA Milwaukee District Office (hereafter "MDO"), DEA Laredo District Office (hereafter "LDO"), and the Milwaukee Office of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). Based upon these investigative efforts, it has been learned that SANTANA is originally from Laredo, Texas, but has now relocated to Milwaukee, Wisconsin. While in Laredo, SANTANA was identified as being involved in the distribution of counterfeit fentanyl pills, cocaine base, marijuana, and other drugs. Likewise, investigators have learned that SANTANA continues to be involved in drug distribution and other illicit activities in the Milwaukee area.

15.     This investigation has revealed that SANTANA frequently posts publicly-available videos and photographs on Facebook that depict SANTANA's suspected criminal activity, to include, the distribution of controlled substances and possession of firearms. Accordingly, on August 27, 2025, Honorable Magistrate Judge Nancy Joseph, of the Eastern District of Wisconsin, signed a search warrant authorizing the acquisition of Facebook data from Meta Platforms, Inc. (hereafter "Meta") for a Facebook account bearing the unique Facebook identification "Conejo.Santana.2025," which was known to be used by SANTANA. On September 10, 2025, Meta responded with the complete search warrant return for the Facebook account "Conejo.Santana.2025" (hereafter "Facebook Account").

16.     Your affiant has conducted a review of returned data for the Facebook Account, which revealed multiple telephone numbers that have been previously associated with the Facebook Account. On March 14, 2025 (UTC), the Facebook account verified a new telephone number for the Facebook Account, which was the **Target Cellphone**. The **Target Cellphone** is the most-recently verified cellular telephone for the Facebook account. Your affiant knows that

5

Meta uses verified telephone numbers to link a Facebook account to a cellular telephone. When a user verifies a telephone number, this telephone number can be used for two-factor authentication. With this added level of login security, if someone tries to log into a Facebook account from an unrecognized device or browser, Facebook will send the user a text message alert and ask the user for a verification code.

17.     An additional review of the returned information from Meta for Facebook account confirmed that since SANTANA moved from Laredo, Texas to Milwaukee, Wisconsin, he has continued to be involved in the distribution of suspected counterfeit fentanyl pills and marijuana. Specifically, SANTANA has previously coordinated the transportation of suspected counterfeit fentanyl pills from Laredo, Texas to Milwaukee, Wisconsin. Based upon the messages on the Facebook Account, these pills are suspected of being sourced from Sinaloa, Mexico.

18.     Likewise, the review of the Facebook account confirms that SANTANA has continued to possess firearms, despite being prohibited from possessing firearms due to his prior felony convictions. This review has also confirmed that SANTANA has also been involved in the sale and/or attempted sale of firearms in the Milwaukee area.

19.     At the same time, case agents have continued to monitor the Facebook Account via postings that the Facebook Account has publicly posted. This review has revealed that on October 8, 2025, SANTANA posted a video in which he was visibly carrying an AR-15 style rifle. Below are screenshots of the video that SANTANA posted:

6

**Posts**   About   Reels   Photos

Conejo Santana
Stories · 11h · 🌐                    •••



Send message...                    ❤️ 👍 😀

7



**Conejo Santana** is 😇 feeling blessed with **Alex Mannan.**

12h · 🎵 Chief Keef · 3Hunna 🅴 · 🌐     ···   ✕

@ work on patrol in the city keeping it safe open carry IM SORRY HIT THAT LIKE dont show LOVE





👍❤️ Conejo Santana + 19     2 comments   508 views



👍 Like      💬 Comment      ➦ Share

20.     The above screenshots of the video from the Facebook account reveal that SANTANA titled this video "@ work on patrol in the city keeping it safe open carry IM SORRY HIT THAT LIKE dont show LOVE" (sic). In this video caption, SANTANA stated that he was "open carry," which your affiant believes is a reference to open carrying a firearm. In the video, SANTANA is seen carrying what appears to be an AR-15 style rifle. In this same video, the magazine that is attached to this rifle has a clear plastic section which reveals, what your affiant believes is, ammunition loaded in this magazine. Throughout these videos, SANTANA is seen wearing, what appears to be, a security-style uniform. However, as previously documented, SANTANA is prohibited from possessing firearms due to his prior felony convictions.

21.     On October 14, 2025, case agents electronically served T-Mobile with an administrative subpoena requesting the subscriber information and tolls for the **Target Cellphone**. On October 14, 2025, T-Mobile responded with the requested information, which revealed that the **Target Cellphone** is currently active and is subscribed to Evangelina Garcia at 5611 N 40th Street, Apt. 3, Milwaukee, WI 53209. Evangelina GARCIA (hereafter "GARCIA") is known to be SANTANA's girlfriend and someone who resides with SANTANA in Milwaukee, WI at 5611 N 40th Street, Apt. 3, Milwaukee, WI 53209.

22.     Case agents have conducted a basic analysis of the toll records for **Target Cellphone**, which covers the period of September 13, 2025 to October 14, 2025. This analysis reveals that from October 5, 2025 to October 12, 2025, SANTANA had approximately 22 contacts with telephone number 1-414-388-7975. Based upon coordination with the Washington County Sheriff's Office, the user of 1-414-388-7975 has been identified as Maurice J. COLLINS, who was arrested in Washington County, Wisconsin on October 11, 2025. During COLLINS's arrest, he was found to be in possession of approximately 20.84 grams of cocaine, 25 grams of marijuana, 320

9

Gabapentin pills, 6 Alprazolam pills, 55 Suboxone strips, one firearm, and assorted drug paraphernalia. Furthermore, Washington County Sheriff's Office also learned that immediately prior to being traffic stopped in Washington County, COLLINS was in north Milwaukee, which is around the same area of town where SANTANA resides.

23.     Based on the above, I believe that the requested data for **920-268-5495 (Target Cellphone)** to include prospective precision location data, pen register/trap and trace data, and subscriber information will assist in locating SANTANA, and will aid in identifying any drug "stash" locations frequented by SANTANA, currently unidentified co-conspirators with whom SANTANA is involved in drug distribution (customers, co-conspirators, sources of supply, etc.)

## TECHNICAL BACKGROUND

24.     Case agents believe the **Target Cellphone** whose service provider is T-Mobile (Service Provider), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of possession of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b).

25.     Based on my training and experience, I know that T-Mobile can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cellphone**, including by initiating a signal to determine the location of the **Target Cellphone** on T-Mobile' network or with such other reference points as may be reasonably available.

10

### A. Cell-Site Data

26.     In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

27.     Based on my training and experience, I know that T-Mobile can collect cell-site data on a historical and prospective basis about the **Target Cellphone.** Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

28.     I know that some providers of cellular telephone service, including T-Mobile have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

29.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

30.     I also know that certain wireless providers, such as T-Mobile, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

31.     Based on my training and experience, I know that T-Mobile also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT

data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

32.    Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cellphone**, including by initiating a signal to determine the location of the **Target Cellphone** on T-Mobile' network or with such other reference points as may be reasonably available.

### C.    Pen-Trap Data

33.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D.    Subscriber Information

34.    Based on my training and experience, I know that wireless providers such as the T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as

name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

## AUTHORIZATION REQUEST

35.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

36.     I further request that the Court direct the T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

37.     I also request that the Court direct the T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the T-Mobile' services, including by initiating a signal to determine the locations of the **Target Cellphone** on T-Mobile' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

38.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result,

14

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellphone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

39.     Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellphone** outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned telephone number **920-268-5495**, referred to herein and in Attachment B as **Target Cellphone**, with the subscriber Evangelina Garcia at 5611 N 40th Street Apt 3, Milwaukee, WI 53209, used by James Anthony SANTANA, that is in the custody or control of T-Mobile a service provider that is headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. The **Target Cellphone**.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**Matter Number XXXXXX**

**I.** **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the **Target Cellphone** for the time period from March 14, 2025, to present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cellphone**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cellphone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the **Target Cellphone** or will connect at the beginning and end of each communication.

The Court has also issued an order(s) pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cellphone**.

c. Information about the location of the **Target Cellphone** for a period of **30 days**, during all times of day and night. "Information about the location of the **Target Cellphone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cellphone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.      Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) involving James Anthony SANTANA and other unidentified subject(s) since March 14, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by T-Mobile in order to locate the things particularly described in this warrant.